28494. STATE REVENUE COMMISSION *v.* CARSON NAVAL STORES COMPANY.

DECIDED NOVEMBER 14, 1940.

542

*B. B. Zellars, Claude Shaw,* assistant attorneys-general, for plaintiff.

*Hitch, Denmark & Lovett, Gordon Carson,* for defendant.

FELTON, J. (After stating the foregoing facts.)

1. Section 15 of the income-tax act of 1931 (Ga. L. Ex. Sess. 1931, pp. 24, 34), is as follows: "Corporations. The tax imposed by this act shall apply to the entire net income, as herein defined, received by every domestic corporation, and every foreign corporation owning property or doing business in this State. Allocation and Apportionment of Income. (a) Interest, and rents not received in connection with the transaction of business, and gains from the sale of property not held, owned, or used in connection with business (less related expenses, if any), shall be allocated to Georgia if received from sources within the State of Georgia; and if received from sources outside the State of Georgia, such income shall be allocated outside the State, and the balance hereinafter referred to as business income shall be allocated to Georgia and shall be taxable as hereinunder set forth. (b) If the trade or business of the corporation is carried on entirely within the State, the tax shall be imposed on the entire business income, but if such trade or business is carried on partly within and partly without the State, the tax shall be imposed only on the portion of the business income reasonably attributable to the trade or business within the State, to be determined as follows: (1) Interest, and rents (less related expenses) received in connection with business in the State, shall be allocated to the State; and where re-

ceived in connection with business outside the State, shall be allocated outside of the State. (2) Gains from the sale of capital assets or property held, owned, or used in connection with the trade or business of a corporation but not for sale in the regular course of business shall be allocated to the State, if the property sold is real or tangible personal property situated in the State, or intangible property connected with the business in the State; otherwise such gains shall be allocated outside of the State. (3) Net income of the above classes having been separately allocated and deducted as above provided, the remainder of the net business income of a corporation shall be allocated and apportioned as follows: (a) Where income is derived principally from the holding or sale of intangible property, the portion thereof attributable to this State shall be taken to be such percentage as the gross receipts in this State for the taxable year bear to the total gross receipts. (b) Where income is derived from business other than the manufacture and sale of tangible personal property, or from the holding or sale of intangible property, or the conduct of a public utility, such income shall be specifically allocated or equitably apportioned within and without the State under the rules and regulations of the commissioner. (c) Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within the State shall be taken to be such percentage of the total of such income as the tangible property and business within the State bear to the total tangible property and total business, the percentage of tangible property and of business being separately determined and the two percentages averaged. For the purpose of the foregoing computation, the value of the tangible property shall be taken to be the value of the tangible property with no deduction on account of encumbrances thereon held and owned by the corporation in connection with such business at the close of the taxable year for which the income is returned, excluding any property the income of which is not taxable or separately allocated under the foregoing provisions. The term 'tangible property,' as used herein, means real property and corporeal personal property, not including money, bank deposits, shares of stock, bonds, notes, credits, evidences of debts, choses in action, or evidence of interests in property. The business of the corporation shall be measured under rules and regulations of the commissioner.

For the purpose of this section, the word 'sale' shall include exchange, and the word 'manufacture' shall include the extraction and recovery of natural resources and all processes of fabricating and curing. Where one corporation owns stock in another corporation, the dividends on such stock received by the corporation owning the same shall not be taxable to such corporation, but shall be taxable to the stockholders of the corporation owning the stock when distributed in its dividends."

The first question is whether the losses on the Lake Pickett, Archer, and Kent properties should have been allocated to Florida or whether they should have been computed in the apportionment formula provided by section 15(3)(c) of the income-tax act of 1931. If the losses occurred in the regular course of the defendant's business, the loss should have been computed in the formula; if they were not incurred in the regular course of business, they should have been allocated to Florida, and not computed in the formula. The charter of the corporation included the following: "That the objects of your petitioners' association and the principal business they propose to carry on under said corporate name are as follows: The doing of the business of naval stores merchants; the doing of a general factorage and commission business in naval stores, cotton, farm products of all kinds, merchandise and articles of all kinds, with the right of advancing money on real and personal property of every kind; the business of manufacturers of naval stores, with the right of operating naval stores farms and the owning of lands, timber and timber lands, and all other property, real and personal, of every nature and description, that may be necessary or usual in the manufacture of naval stores and in operating and conducting of naval stores farms; the business of buying, selling, and dealing in lands, timber and timber lands; the business of owning and operating sawmills, with the right to own and operate tramroads and steamboats as incidental or necessary to any of the businesses in which they may engage hereunder; the business of owning and operating farms for the cultivation of cotton, corn, and other agricultural products; the business of wholesale and retail grocers; the doing of a general merchandise business; the business of dealing in mules and horses and all such implements and utensils as are used on naval stores farms and in the operating of sawmills and in the marketing of the products of such

farms and sawmills; the doing of a general storage and wharfage business, with the right to own and lease wharves and warehouses; the doing of all other things and matters usual in or incident to, any of the businesses aforesaid; with the right to borrow money, and to give notes, bonds, certificates of indebtedness, and other instruments therefor, and to secure the same by a lien or pledge, mortgage or deed to and upon any or all of the company's property." The evidence authorized the finding that these losses were incurred in the regular course of the defendant's business. It showed that the properties were acquired by foreclosure of loans made for the purpose of furthering the naval stores business, and that the properties had been operated continuously since their acquisition by the corporation, the Archer properties, a farm, seventeen years, Lake Pickett, an orange grove, four years, and Kent, a turpentine tract, twelve years. The charter specifically provided that, among other things, the business of the corporation should consist in the "business of owning and operating farms for the cultivation of cotton, corn, and other agricultural products," and the right of "operating naval stores farms," etc. It follows that the finding of the jury was correct in that these losses should have been computed in the formula and not allocated to Florida.

2. The next question is whether section 15(b)(1) means gross interest and rent or net interest and rent. The subsection specifically provides in the parenthetical (less related expenses) that net sums are contemplated, and subdivision (b)(3) reiterates that net income is meant. In ascertaining what the net income from interest was in this case the defendant used a formula. The State Revenue Commission contends that the formula is illegal, because not provided by law or order of the commission. There is no contention that the expenses in earning the interest are excessive or unreasonable under the circumstances of this case. The only objection is as above stated, and the additional argument that the formula used under different facts and circumstances might result in showing excessive charges for the collection of the interest. The law does not purport to provide for a formula for the deduction of the cost of earning interest, and the method used in arriving at such cost will and must be examined in the light and circumstances of each case. Since there is no contention in this case that the formula used by the corporation shows excessive costs in

earning interest, our conclusion must be that the court did not err in approving the jury's finding that the computed cost of earning the interest was reasonable. This ruling is not to be construed as approving the formula used. The effect of the ruling is that the use of the formula is not prohibited on the ground that the law does not prescribe one or because the Revenue Commission does not prescribe one for such computations. Any fair means of arriving at such costs are available. Of course the means which most nearly approach the truth should be relied on.

3. The corporation properly included the Florida real estate in the statutory formula. This method is unequivocally provided by section 15(3)(c) of the income-tax act of 1931. The fact that some of the properties produced no income at all would not affect the rule. All property must be included in the apportionment, except that producing tax-exempt income or producing income specially allocable. The Florida real estate did not produce tax-exempt income or income separately allocable.

These rulings cover the objections to the evidence and charges of the court. The court did not err in overruling the motion for new trial.

*Judgment affirmed.* *Stephens, P. J., and Sutton, J., concur.*